Neilson, Ch, J.
The case was tried at the special term without a jury, and the appeal taken from the judgment entered upon findings of fact and of law. One of the parties in interest, Mr. McGrraw, having departed this life, his executors join as plaintiffs.
The question involved is, whether, under the special circumstances, the plaintiffs are entitled to recover the award fixed for property taken in the improvement of one of our streets. It is obvious that compensation should be made, as the property has been taken under legislative direction, and is now in the use of the city. But it is claimed that the city is not liable. First, by reason of the terms of the statute authorizing the change of the street, and Secondly, because the money could not be raised by the sale of the lots on which the assessment was laid.
Sackett street had been laid down on the commissioners’ map of the city prior to this improvement. The statute of 1868 directed the commissioners of the park to take proceedings to widen that street and alter the map. They were to fix the district of assessment, and apply to the supreme court of this district, upon personal notice to the counsel of the city, for the appointment of three commissioners to estimate the expenses and damages, the amount to be paid to the owners of land required to be taken, and the benefits for which the owners of adjacent property should be assessed, and to apportion and assess the amounts thereof. It was also provided that the laws then in force relating to widening, opening and improving streets and avenues in the city of Brooklyn, and the levy and collection of the assessments for such improvements, and the lien *288 thereon, should apply, except as to the special duties imposed upon the park commissioners.
Those commissioners took the proceedings directed. The three commissioners of assessment were appointed and their report was confirmed by the court. Sackett street was widened and improved. The assessments for widening the street, amounting to $334,688.63, were confirmed April 13, 1870, and in December, 1878, $50,717.10 thereof remained unpaid. Owing to the condition of the books, in the departments relating to taxes, assessments and sales, the testimony is not very clear ; but, it appears that of the land assessed for the Sackett street improvement four hundred and sixty-eight parcels remain unsold. There have been no sales by the city, on that account, since 1871.
Property which belonged to Sage and McGraw, undivided in interest, was assessed for alleged benefits $13,113, and that was paid in April, 1870; for other portions of their property, taken for the street, the sum of $7,135 was awarded, and was payable to them, but remains unpaid.
These general statements may suffice to enable us to consider the special questions raised by the learned counsel for the defendant.
It was claimed on the argument that Sackett street was improved by a special commission under acts of the legislature, the actors charged with the performance of specified duties not having been the agents of the city. I am of opinion that this was a municipal improvement, a work done by and for the city.. It was so because of its relation to the city ; was thus treated in the statute of 1868, and in the supplemental acts of 1873 and 1873. It seems obvious that such legislation, quite common in respect to local matters, does not make the work a State enterprise.
Nor does the question of agency present any difficulty. The park commissioners viere designated to in *289 itiate and carry forward the movement to a special and limited extent. They were not clothed with power to fix the assessment to be collected or the damages to be allowed ; that power was given to the three commissioners appointed by the court, as in other cases. Nor were they to collect the assessments or pay the claims ; those duties devolved upon the city, and the laws then in force as to such matters were made applicable. Thus it was that the records of the proceedings, of the liens for assessments, of the damages awarded, of the sales made, and of the payments on account of this improvement, were kept in the offices of the city, in common with other like records ; thus it was also that the city could make sales for unpaid assessments and give title to the purchasers.
It is sufficient to say, in regard to the matter set up in the third part of the answer, that no claim is made against the officers of the city. The claim, if one exists, is against the city ; if negligence is chargeable it is the negligence of the city.
Testimony was introduced as to the omission to sell the residue of the parcels. It does not appear why those parcels were not sold with the others, in 1871. I do not, after reading the evidence, remember' that any of the witnesses were present at that sale or able to say why the four hundred and sixty-eight parcels were not then put up or sought to be sold. The evidence does show that at later dates the property was offered, but not taken ; that purchasers had grown cold, fallen off in spirit if not in numbers. The act of 1875, reducing the interest, had an adverse influence. In 1878 about thirty thousand parcels of land were in arrear in respect to taxes, water-rates and other liens. From a sense of depression, thus, and perhaps otherwise, induced, witnesses are of opinion that the land yet chargeable with arrears as to this improvement could not have been sold. This view, as a defense, does not appear to *290 have been accepted by the learned judge at special term. The sales should have been made at the earliest time possible, consistent with reasonable diligence, to meet this award, and before other complications set in. Here was default, negligence. If the money could not be thus raised recourse should have been had to other sources of supply.
But the city did sell seven hundred and eighty-seven parcels of the property, and from those sales, and from voluntary payments, received $283,971.53. It is difficult to reconcile that actual experience with the theory that the property was to be considered as practically confiscated. But the money was paid out or applied, other awards paid in full, a signal departure from the equitable pro rata mode of distribution. It is said that that was in obedience to a judicial direction. Wé concur in the views expressed in the opinion of Judge McCub on this subject. Nor is it easy to see how a mere order, if made at special term, on an application, to which these plaintiffs were not parties, could be binding on them, and work out a forfeiture of their claim. So far as the comptroller was concerned it would relieve him from personal aspersion, but that is its only significance. A portion of the money should have been paid to these plaintiffs, and herein the defendants are chargeable with negligence.
The plaintiffs’ property has been condemned, taken for public use, and, thus far, without compensation. That fact would offend all well-conceived notions ns to the rights of property as guaranteed by the constitution. But such was not the intent of the legislature. The rule that private property shall not be taken without compensation, immediate or well provided for and assured, was respected in the statutes to which we have referred. The evil consequence must be referred to the management and negligence of the defendant. Within a series of well accepted cases the judicial remedy re *291 mained, and I am of opinion that the judgment should be affirmed, with costs.
Reynolds, J., concurred.
Judgment accordingly.